[Cite as *State v. Pellin*, 2012-Ohio-5342.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.   11 MA 194 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| RICHARD PELLIN, JR., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:      Criminal Appeal from Common Pleas
                               Court, Case No. 09CR1158.


JUDGMENT:                      Affirmed.


APPEARANCES:
For Plaintiff-Appellee:         Attorney Paul Gains
                                Prosecuting attorney
                                Attorney Ralph Rivera
                                Assistant Prosecuting Attorney
                                21 West Boardman Street, 6th Floor
                                Youngstown, Ohio  44503

For Defendant-Appellant:        Attorney Scott Cochran
                                19 East Front Street
                                Youngstown, Ohio  44503


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                Dated:  November 14, 2012

VUKOVICH, J.

{¶1} Defendant-appellant Richard Pellin Jr. appeals the decision of the Mahoning County Common Pleas Court which found him guilty of complicity to theft. He argues that the evidence was insufficient to support his conviction, that the evidence was insufficient regarding venue, and that the judgment was contrary to the manifest weight of the evidence. For the following reasons, the judgment of the trial court is hereby affirmed.

## STATEMENT OF THE CASE

{¶2} Appellant's mother was the president and sole shareholder of Pellin Emergency Services, Inc. (PEMS), an ambulance service provider that was located in Ellsworth, Ohio. After she defaulted on nearly two million dollars in loans from Chase Bank, the bank obtained a money judgment against PEMS and then sought a receivership over the company.

{¶3} In March of 2006, a magistrate appointed a receiver to protect the creditors and manage PEMS, by making collections and paying debts and expenses for instance. The order directed all persons acting under the direction of PEMS to deliver a list of any assets connected with PEMS in their possession or under their control and enjoined all persons from disturbing the possession of the receiver. The order directed Mrs. Pellin and PEMS to deliver all company money on deposit in PEMS accounts and to immediately turn over income to the receiver. The order also directed the receiver to open a receivership bank account to operate PEMS.

{¶4} Only appellant filed objections from the magistrate's decision. PEMS soon filed for bankruptcy, which stayed the court proceedings so that a receiver was not immediately put in place. PEMS then dismissed the bankruptcy action, which reactivated the receivership action. Before the trial court issued its August 21, 2006 entry adopting the magistrate's decision, appellant and his mother traveled to Pennsylvania on July 24, 2006 and opened an account on behalf of PEMS at Greenville Savings Bank with appellant (as vice-president) and Mrs. Pellin (as president) named as alternate signatories. On that day, they deposited over $24,000 in checks payable to PEMS.

**{¶5}** The person who managed the receivership testified that appellant and his mother were advised to act as if the court owned the company, were instructed that all checks must be deposited in the new Chase account, and were warned that the receiver must authorize all checks. (Tr. 24-25, 28, 33). There was a short transition period where they were permitted to utilize the other company account, which was a credit union in Warren, Ohio that had been disclosed to the receiver. (Tr. 24, 28, 32). The Greenville account was never disclosed to the receiver.

**{¶6}** In the year after the trial court's receivership judgment, checks totaling over $85,000 were deposited into the Greenville account by Mrs. Pellin. (Tr. 46). These checks were written to PEMS by various clients who received ambulance services. (Tr. 80, 83). Also in the year after the court's receivership order, checks totaling over $82,000 were written on PEMS's Greenville account and made payable to Mrs. Pellin. She cashed these checks at the Greenville Savings Bank. (Tr. 46, 48, 85).

**{¶7}** Moreover, in October 2006, a check for $5,357 payable to Mrs. Pellin was endorsed by her and then endorsed and cashed by appellant. State's Exhibit No. 50. And, a June of 2007 check was made payable from the PEMS Greenville account to appellant for $3,200. State's Exhibit No. 58.

**{¶8}** When the receiver began noticing that certain government clients had unpaid invoices, these clients were contacted and the receiver waited for evidence from the clients that they had in fact paid the invoices. (Tr. 28, 34). The receiver soon discovered that the checks had been received by PEMS and cashed through the Greenville account, a PEMS account unknown to the receiver. (Tr. 34-35). Due to this fact and the fact that one employee's paychecks were signed and cashed by a different employee, law enforcement was contacted.

**{¶9}** In October 2009, appellant and his mother were indicted on the current theft count resulting from the use of the Greenville account. (They were also indicted on nine counts of forgery and nine counts of theft due to the issue with the employee's paychecks.) Appellant's case was tried to the bench. The state presented testimony from the manager of the receivership and the bank's head teller,

who opened the account for the Pellins and who regularly saw Mrs. Pellin at the bank.

{¶10} Appellant testified in his own defense that he was in charge of day-to-day operations as the general manager of PEMS. (Tr. 176). He revealed that his mother could not keep a bank account solely in her name due to IRS tax lien issues. (Tr. 179). He stated that before the receivership went into effect, the appointed receiver and various attorneys advised them to open an out-of-state account so that Chase could not attach the company's funds while the receivership was pending and so that they could keep the company functioning by paying employees and bills until the final order was entered. (Tr. 180-185). Appellant testified that he was unaware that his mother continued to make deposits and withdrawals after the final order of receivership. (Tr. 186, 188, 200-203). He explained that the PEMS checks she took would have arrived at the company's post office box in Ellsworth, Ohio. (Tr. 188).

{¶11} Mrs. Pellin confirmed that she could not have an account in her name without the IRS confiscating it. (Tr. 227). She stated that they could not run the company out of the local account because Chase would take the money, which would make it impossible to pay their bills. (Tr. 228). She also claimed that the receiver advised them to open an account in another state as Chase would be less likely to find the money. (Tr. 229). Mrs. Pellin claimed that even though she did not disclose the Greenville account to the receiver, she used it to pay PEMS bills such as rent, cable, electric, and health insurance. She also claimed that she did not discuss the continuing deposits and withdrawals with appellant, who was her son and the general manager of the company. (Tr. 233-234, 243).

{¶12} The court found appellant guilty of complicity to theft for the activity in the Greenville account. *See* R.C. 2913.02(A)(2). This was a fourth degree felony as the amount stolen was more than $5,000 and less than $100,000. *See* R.C. 2913.02(B)(2). (Appellant was found not guilty on the 18 counts regarding the employee's paychecks.) On November 18, 2011, the court sentenced appellant to five years of community control and 60 days of electronic monitoring house arrest.

The court also imposed a $5,000 fine and restitution. Appellant filed a timely notice of appeal from this sentencing entry.

SUFFICIENCY OF THE EVIDENCE

{¶13} Appellant's first assignment of error contends:

{¶14} "THE TRIAL COURT ERRED IN ENTERING A JUDGMENT OF CONVICTION AGAINST RICHARD PELLIN FOR THE REASON THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT SAID JUDGMENT."

{¶15} Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991).

{¶16} Appellant was convicted of complicity to theft in violation of R.C. 2913.02(A)(2), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * Beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]"

{¶17} The complicity statute provides in pertinent part: "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: (1) Solicit or procure another to commit the offense; (2) Aid or abet another in committing the offense[.]"

{¶18} Appellant offers various contentions in support of his insufficiency argument. First, he argues that there was no evidence that the activity in the Greenville account was beyond the scope of that authorized after the receiver was finally appointed, emphasizing that the state failed to establish how long the

"transition period" lasted during which they were permitted to use their pre-existing accounts.

**{¶19}** The person who managed the receivership testified that the transition period existed only at the "very beginning," and it was only during this period which PEMS could use their preexisting account at the Warren credit union. (Tr. 28). Thereafter, all activity was to proceed through the Chase account, and checks were to be sent to the receiver for signature. (Tr. 24, 28, 32-33). The receiver knew of the Warren credit union account, which had been disclosed as required. However, the receiver was never notified of the existence of the Greenville account.

**{¶20}** Viewing the evidence in the light most favorable to the state, one could find that the use of this account was beyond the scope of the express or implied consent of the receiver. The testimony that the transition period was only during the "very beginning" of the receivership would not necessarily include activity occurring in 2007 for a receivership which began August 21, 2006. In fact, there was direct evidence in the form of a June 15, 2007 paycheck signed by the receiver on the Chase account, which testimony established was used after the transition period had ended. State's Exhibit No. 7; (Tr. 32).

**{¶21}** Plus, the testimony sufficiently established that there was no authority to use a non-disclosed account even during the transition period. Under the order, the receiver had the right to possess all cash, checks, and income. The receivership order required any person under the direction of PEMS to deliver a list of assets connected to PEMS in their possession or control. The Greenville account was in the control of appellant as he opened it and remained as a cosignatory. In addition, he knew of the order as he had filed objections to the magistrate's order. He was also present at various meetings concerning the receivership.

**{¶22}** Regardless, even if it there was some authority to use the pre-existing account for certain items and even if the transition period still existed during the use of the account, a reasonable person could find that the withdrawals were beyond the scope of that authority. That is, since the checks were written to and cashed by Mrs. Pellin and/or appellant, a reasonable person could conclude that the account was not

used to pay creditors as claimed but instead was used to funnel money away from the receivership and into the private coffers of Mrs. Pellin and/or appellant. *See State v. Farwell*, 12th Dist. No. CA2001-03-041, 2002-Ohio-1912 ("Once a person lawfully has control over property with consent, that person cannot thereafter exert control for a different purpose"). Viewed in the light most favorable to the prosecution, some rational fact-finder could find beyond a reasonable doubt that the deposit of funds into and/or withdrawal of funds from the Greenville account was beyond the scope of the authority granted by the receiver or the court's order.

{¶23} Appellant's second main argument here claims that it was solely Mrs. Pellin who made all of the deposits after the initial deposit (which is not part of the theft claim as it was made prior to the final order of receivership). He urges there is no evidence that he knew she continued to use the account after that final order, that he knew that the Greenville account was not included in the receivership, or that he knew the transition period was over.

{¶24} One is guilty of complicity for aiding and abetting if the evidence demonstrates that the defendant supported, assisted, encouraged, cooperated with, advised, or incited another person's commission of a crime and that the defendant shared that other person's criminal intent. *State v. Johnson*, 93 Ohio St.3d 240, 243, 754 N.E.2d 796 (2001). To aid and abet is to assist or facilitate the commission of a crime or promote its accomplishment. *Id.* at 243, quoting Black's Law Dictionary 69 (7th Ed.1999). Consequently, the state is not required to show a calculated plan in order to show intent for complicity. *State v. Gilliam*, 7th Dist. No. 03MA176, 2005-Ohio-2791, ¶ 71. Intent can be inferred from the circumstances surrounding the crime. *Johnson*, 93 Ohio St.3d at 245. Thus, participation in another's criminal intent may be inferred from one's presence, companionship, and conduct before, during, and after the offense is committed. *Id.*

{¶25} Appellant was the general manager in charge of day-to-day operations and the son of the owner. He opened the Greenville account with his mother. He was one of the signatories on the account and was listed as the vice-president of the company. Moreover, he had a court-ordered duty to disclose this account to the

receiver. As he did not obey this obligation, circumstantial evidence exists that he knew the Greenville account was not disclosed to the receiver. In addition, once the Chase account was running, he knew the transition period was over. Regardless, as aforementioned, even if the transition period lasted for some time, there was no authority given by the receiver for him or his mother to take random amounts from the company's deposits when they felt they should receive compensation.

**{¶26}** Contrary to appellant's claims in his testimony and on appeal, there was evidence presented that he knew his mother used the account after the receiver was appointed in August of 2006. A PEMS check drawn on the Greenville account was written to his mother on October 12, 2006, which he endorsed after her endorsement and cashed. And, a June 5, 2007 check was made payable to appellant on this account and cashed by him. Hence, although most of the deposits and withdrawals were made by his mother, two transactions after the date the receiver was appointed involved appellant directly.

**{¶27}** In any case, there is sufficient evidence of his complicity as a reasonable person viewing all of the evidence in the light most favorable to the state could conclude beyond a reasonable doubt that in opening the account he aided and abetted his mother in committing theft. One could rationally conclude that the account was opened in anticipation of a receiver being appointed as the bankruptcy stay had been lifted and the magistrate's order was ready to be adopted by the trial court. A reasonable person could find that, besides the motive of hiding money from creditors existing at the time of the account's opening, another motive was to establish a hidden account that would be available to funnel money from the company's incoming receipts without the knowledge of the receiver.

**{¶28}** As appellant did not disclose the account to the receiver as required by court order, one can conclude that he knew his mother was using the account for this purpose, especially since his name was involved with two of the transactions after the receiver was appointed. There is sufficient evidence that he facilitated or assisted his mother in her actions regarding the Greenville account and in fact that he participated in the transactions as well.

**{¶29}** Appellant's third argument under this assignment of error states that the receiver was not the "owner" of the property and that the company remained the "owner." As set forth supra, the statute defining this type of theft provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * Beyond the scope of the express or implied consent of the owner or person authorized to give consent". R.C. 2913.02(A)(2).

**{¶30}** Appellant concedes that the receiver had a possessory interest in the checks due to the court order. However, appellant contends that Mrs. Pellin, as the company's president and sole shareholder, did not deprive the owner of property and that the activity in the Greenville account was not beyond the consent of the owner as this would be akin to charging her with stealing from herself.

**{¶31}** As used in Chapter 2913, unless the context requires a different meaning, "owner" means "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C. 2913.01(D).

**{¶32}** Appellant states that Mrs. Pellin fits this definition. Notably, the statute states any person *other than the actor*. Mrs. Pellin is the actor appellant is referring to here; it is her actions that appellant is said to have aided and abetted. In any event, R.C. 2913.01(D) provides the definitions of who can be considered an owner; *it does not define who cannot be a thief* as appellant's argument seems to suggest.

**{¶33}** Moreover, this definition results in a conclusion that the receiver is considered an "owner" as he is any person, other than the actor, who has possession or control, or who has any license or interest in property or services. Thus, the receiver was not only a "person authorized to give consent," but he was also considered an owner that could be deprived and an owner whose consent was breached beyond its scope.

**{¶34}** Finally, the case appellant cites is inapplicable as the defendant in that case was the *person* who owned the ladders that he was charged with stealing. *See*

*City of Fairfield v. Sims*, 12th Dist. No. CA97-12-247 (Dec. 21, 1998). The appellate court found that it was legally impossible for one to steal from oneself as the owner would have necessarily given himself consent to take the ladders he took. *Id.*

**{¶35}** That very court distinguished its *Sims* holding in a later case more on point here. *See State v. Farwell*, 12th Dist. No. CA2001-03-041, 2002-Ohio-1912, fn. 4 (distinguishing *Sims* because it involved theft without consent rather than theft beyond the scope of consent and because an individual is different than a corporation). The *Farwell* court stated that the legal principle that a person cannot steal from himself does not apply to corporations. *Id.* The court noted that a corporation is a separate legal entity from its shareholders, even when there is only a single shareholder. *Id.* (concluding that defendant could be charged with theft from stealing from company where he had a 55% ownership interest in company assets).

**{¶36}** As appellant acknowledges by focusing on his mother being the sole shareholder, one owner can steal from other owners. Once the receiver fit the definition of an owner, the sole shareholder can steal from him as another owner. Thus, this argument is without merit.

<u>VENUE</u>

**{¶37}** Within appellant's first assignment of error dealing with sufficiency of the evidence, he also argues that there was insufficient evidence that venue was proper in Mahoning County, Ohio. His Crim.R. 29 motion for acquittal raised this issue as well.

**{¶38}** A criminal trial shall be held in a court with jurisdiction of the subject matter and in the territory of which the offense or any element of the offense was committed. R.C. 2901.12(A). When the offense involves the unlawful taking or receiving of property, the offender may be tried in any jurisdiction from which or into which the property was taken or received. R.C. 2901.12(C). When the offense is complicity, the offender may be tried in any jurisdiction in which the complicity or any of its elements occurred (even if the offense resulted out of state). R.C. 2901.11(D)-(E).

**{¶39}** The statute continues by providing that when an offense is committed in this state while out of state and the jurisdiction in this state is not reasonably ascertainable, the offender may be tried in any jurisdiction in which the offense or an element reasonably could have been committed. R.C. 2901.12(F). When it appears beyond reasonable doubt that an offense or any element was committed in more than one jurisdiction, but it cannot reasonably be determined in which, the offender can be tried in any of those jurisdictions. R.C. 2901.12(G).

**{¶40}** In a criminal case, venue is not a material element, but still the state must prove venue beyond a reasonable doubt. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). "Venue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *State v. Chintalapalli*, 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000). Moreover, venue need not be proven in express terms. *Id.* Rather, it can be established by all of the facts and circumstances viewed in the light most favorable to the state. *Id.*

**{¶41}** Notably, circumstantial evidence has the same probative value of direct evidence. *State v. Christman*, 7th Dist. No. 786 (May 28, 1999), citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). Moreover, the fact that an alternative venue would also be acceptable does not ruin venue in the chosen location. *Id.* Finally, it has been stated that a trial court has broad discretion to determine the facts which would establish venue. *See, e.g., State v. Mills*, 6th Dist. No. WM-09-014, 2010-Ohio-4705, ¶ 22; *State v. Gonzalez*, 188 Ohio App.3d 121, 2010-Ohio-982, 934 N.E.2d 948, ¶ 4 (3d Dist.); *State v. Issa*, 8th Dist. No. 90622, 2008-Ohio-5592, ¶ 12.

**{¶42}** Appellant points out that the Greenville account was opened in Pennsylvania, the checks payable to PEMS were deposited there, and the checks written on the PEMS account were cashed there. He states that they were permitted to receive checks in Mahoning County and that the conduct at issue did not exceed the scope of authority given by the receiver until the checks were deposited in the Greenville account. He cites a case where the actor's purpose to deprive the owner of a vehicle driven with the owner's consent did not arrive in his head until he arrived

in another jurisdiction.  *See State v. Clapp*, 12th Dist. No. CA87-01-001 (June 29, 1987).

{¶43} However, this case is distinguishable because a reasonable person could find, under the facts and circumstances existing here, that the purpose to deprive the receiver arose before the checks were received; thus when the checks were received in Mahoning County, the purpose already existed.  That is, one can conclude that appellant opened the account with purpose to eventually deprive a receiver that was likely to be appointed soon.  (It was likely because the magistrate had already entered its order, no objections had been entered by PEMS or Mrs. Pellin, and the bankruptcy stay had just been lifted.)

{¶44} A reasonable person could also find that purpose existed when the checks were collected in Mahoning County and the transportation to the Greenville bank began.  A reasonable person need not conclude that the purpose to deprive the receiver arose only after the driver arrived at the bank in Pennsylvania each week.

{¶45} PEMS was a company located at 10808 Akron-Canfield Rd. Ellsworth, Ohio, which is in Mahoning County.  The company's post office box was also in Ellsworth.  The state introduced as evidence the checks payable to PEMS that had been diverted from the receiver by being deposited into the Greenville account.  The great majority of these checks contained the company's Ellsworth address after its name as payee.  Many of the checks (over $15,000 worth) represented payment to PEMS for services rendered in Mahoning County to its various townships.  The checks were originally received in Mahoning County by PEMS and then taken from Mahoning County.

{¶46} We also note that the checks made payable to and cashed by Mrs. Pellin (and/or appellant) were drawn on the account of PEMS, a company located and incorporated in Mahoning County; those checks also contained the company's local address in Mahoning County.  *See State v. Copeland*, 12th Dist. No. CA2003-12-320, 2005-Ohio-5899, ¶ 18-20 (daily operations from that venue, company was incorporated at that address, and checks were drawn on that company's account).

**{¶47}** Lastly, the receivership was created by a Mahoning County trial court. It is this order that required the disclosure of all PEMS accounts by all of those with control over them and that defined the receiver's possessory interest in checks arriving at PEMS. *See Chintalapalli*, 88 Ohio St.3d at 45 (divorce decree that obligated defendant to make child support payments was issued in county asserting venue over criminal non-support action). Considering all of these facts and circumstances, the trial court could rationally find that the facts support venue in Mahoning County, Ohio. This argument is thus overruled.

<u>WEIGHT OF THE EVIDENCE</u>

**{¶48}** Appellant's second assignment of error provides:

**{¶49}** "THE TRIAL COURT ERRED IN ENTERING A JUDGMENT OF CONVICTION AGAINST RICHARD PELLIN FOR THE REASON THAT SAID JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶50}** Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

**{¶51}** A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.* In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, we defer to the fact-finder who is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it. *See Seasons Coal*

*Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E. 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 1212 (1967).

{¶52} Appellant contends that even if his defense is disbelieved, there is no state's evidence to weigh. This is a sufficiency argument, and his sufficiency arguments were addressed supra. He also generally contends that the verdict was contrary to the manifest weight of the evidence as his defense presented credible evidence that: he did not open the Greenville account for the purpose of depriving a future receivership; he did not know a receiver would be appointed in the future; he did not know he was aiding his mother in committing theft by acting as a cosignor in opening the account; he was unaware money was deposited or withdrawn after the receiver was appointed; he was unaware of when the transition period ended; he did not know that the account did not become part of the receivership; and he was not involved in the account after it was opened.

{¶53} Appellant's version of events may be reasonable. However, considering the combination of direct and circumstantial evidence in this case, so is the state's version. The trial court heard the manager of the receivership testify, read the court orders regarding the receivership, heard the testimony of the head teller at the bank, and reviewed the exhibits including the various checks written on the PEMS out-of-state account. The trial court also watched the testimony presented by appellant and Mrs. Pellin.

{¶54} The trial court occupied the best position to view their demeanor, voice inflections, eye movements, and gestures. Notably, the court believed appellant regarding an employee's nine payroll checks that were cashed by someone else and thus found him not guilty of forgery and theft of the checks. However, the court, in its position as trier of fact, disbelieved appellant on the matter of his intent regarding the Greenville account. This is not an extraordinary case requiring a reversal in order to avoid a manifest miscarriage of justice. Thus, we overrule this assignment of error.

**{¶55}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.